█ In the Matter of MICHAEL LaCHANCE, Petitioner, v RICHARD CORBISIERO, as Chairman of the New York State Racing and Wagering Board, et al., Respondents.—Petitioner's application, pursuant to CPLR article 78, transferred to this court by order of the Supreme Court, New York County (C. Beauchamp Ciparick, J.), entered on October 4, 1988, seeking to annul the determination of respondent New York State Racing and Wagering Board dated September 29, 1987 which, following a hearing, suspended petitioner's license to drive in harness racing events for a period of eight days for a violation of 9 NYCRR 4117.4 (m), is unanimously granted, and the order of respondent annulled, without costs.

Petitioner was suspended by the track judges for a period of eight days for committing a racing infraction while driving the horse "Tudora Lobell" during the 10th race at Roosevelt

Raceway on September 27, 1987. After a hearing, he was found to have violated rule 4117.4 which includes, as a racing violation: "(m) Causing any horse or a field of horses to excessively slow down" (9 NYCRR 4117.4 [m]). The Hearing Officer found that petitioner's driving performance during the second quarter of the race "tended to slow down the field excessively" and recommended that the eight-day suspension be confirmed. The New York State Racing and Wagering Board confirmed the suspension, finding "The early times set by driver LaChance with 'Tudora Lobell' during the first two quarters excessively slowed down the field and such slow-down in the early stages of the race altered the pattern of the race, constituting a violation of Rule 4117.4 (m) by the pace setting [sic] driver LaChance."

Petitioner contends that he did not violate rule 4117.4 (m) because at no time, including any point during the second quarter of the race, did his actions in driving "Tudora Lobell" have the effect of excessively slowing down any horse or the field of horses as contemplated by the express language of the rule. Moreover, he asserts that his driving was consistent with a competitive strategy he employed with "Tudora Lobell" in a race on September 7, 1987, which he won, when his second-quarter time was 32 seconds, a mere two-fifths of a second faster than his second-quarter time during the race in question. Finally, he points out that the track was deep and loose which caused a problem with the horse's gait known as "cross-firing", in which a hind foot strikes the diagonally opposite front foot.

The only witness to testify at the hearing on behalf of the Board was Arthur Gray, an associate judge at Roosevelt Raceway. Mr. Gray stated that, in the view of the judges, petitioner's horse was capable of a faster second-quarter time and, as the Hearing Examiner's report stated, they "did not see any visible effort by LaChance to urge his mare to a faster pace." However, Mr. Gray also agreed that petitioner exercised his best efforts to win the race, that it was good strategy to allow the horse to "take a breather" in the second quarter of the race, that the four drivers following petitioner during the first half of the race were not prevented from pulling out and passing petitioner if they chose and that no driver placed any objection against petitioner for his performance during the race.

Larry Summer, the horse's trainer, testified on petitioner's behalf. He confirmed that the horse has a tendency towards cross-firing and as a result "wears a lot of boots" for leg

protection. He indicated that marks on the white boots clearly showed evidence of cross-firing and stated that the mare "is better suited to a firm race track" because of her gait and her small size.

While the record is sufficient to establish that the second quarter of the race was run at a slow pace, it does not reflect that petitioner caused "any horse or a field of horses to excessively slow down" so as to constitute a violation of rule 4117.4 (m). We therefore conclude, as we did in an earlier appeal of a suspension imposed against petitioner *(Matter of LaChance v Corbisiero,* 147 AD2d 80), that the evidence fails to establish any act on his part which violates the Board's rule.

As to petitioner's other contentions, it need only be observed that rule 4117.4 (m) is not unconstitutionally vague. In the course of his testimony, petitioner explained excessively slowing down a horse or a field of horses as meaning "that the quarters have to be so slow that you're going to force people to come out, or—because they are not comfortable sitting in your back, or you get them in trouble or something with their horse. Or like jam the field and pile everybody on top of each other." It is clear to this court both that a violation of the rule requires some interference with at least one other horse caused by a driver's slow pace and that petitioner fully comprehended the standard of conduct to which a driver's actions must conform *(People v Smith,* 44 NY2d 613).

In view of the disposition of this appeal, it is unnecessary to address petitioner's other arguments. Concur—Kupferman, J. P., Milonas, Kassal, Wallach and Rubin, JJ.